CORRECTED: OCTOBER 27, 2008
TO BE PUBLISHED

# Supreme Court of Kentucky

2007-SC-000288-MR

WILBERT HARP                                     APPELLANT

V.                ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE GEOFFREY P. MORRIS, JUDGE
NO. 06-CR-000714

COMMONWEALTH OF KENTUCKY                    APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING IN PART AND
### REVERSING AND REMANDING IN PART

## I. INTRODUCTION.

Wilbert Harp appeals as a matter of right[1] from his convictions for indecent exposure, first-degree sodomy, and seven counts of first-degree sexual abuse. Because the jury instructions on the seven sexual abuse counts were identical, containing no identifying characteristics that required the jury to differentiate among each of the counts, we reverse Harp's sexual abuse convictions. We otherwise affirm Harp's indecent exposure or sodomy convictions.

## II. FACTUAL AND PROCEDURAL HISTORY.

Harp moved in with his girlfriend and her four-year-old daughter, B.B. According to B.B., Harp began sexually molesting her sometime after they all

---

[1] Ky. Const. § 110(2)(b).

moved to a different apartment several months later. According to B.B., Harp engaged in a variety of sexual acts with her while her mother was at work. B.B. eventually disclosed the incidents to her mother, but the mother took no action at that time because Harp assured the mother that nothing improper was occurring.

While B.B. and her aunt were looking at a magazine that contained an advertisement depicting a couple kissing, B.B. told the aunt that Harp had done the same thing to her. The aunt reported B.B.'s statements, which eventually led to Harp's being questioned by the police. Harp admitted inappropriate contact with B.B. but blamed the contact on B.B.'s curiosity about sex. After being admitted to a psychiatric hospital, Harp wrote a letter to his psychologist describing sexual contact with B.B. but, again, blaming B.B. for the contact.

Harp was ultimately indicted for one count of first-degree sodomy, seven counts of first-degree sexual abuse, and one count of indecent exposure. A jury convicted Harp on all charges contained in the indictment. Harp was sentenced to twenty-five years for the sodomy conviction; two and one-half years' imprisonment on each sexual abuse conviction; and ninety days for the indecent exposure conviction, all to run concurrently. This appeal followed.

### III. ANALYSIS.

Harp raises six issues. He contends that the trial court erred by (1) admitting the letter he wrote to his psychologist, (2) admitting evidence of sexual contact with B.B. not charged in the indictment, (3) finding B.B. competent to testify, (4) allowing improper bolstering of B.B.'s testimony, (5) failing to direct a verdict on the indecent exposure charge, and (6) failing to instruct the jury

2

properly because the instructions on multiple counts of first-degree sex abuse failed to require the jury to make separate factual findings and reach a unanimous verdict on each count.

Because we agree with Harp that the jury instructions regarding the sexual abuse charges were erroneous, we shall discuss that issue first. Since the flawed sexual abuse instructions caused Harp no discernible prejudice in the sodomy and indecent exposure convictions, we affirm those convictions. We must also address the remaining issues because they are either pertinent to the sodomy or indecent exposure convictions, or concern matters likely to arise upon remand of the sexual abuse charges.

A. Trial Court Committed Reversible Error in Failing to Add Distinguishing Characteristics to Each Sexual Abuse Charge.

Harp argues that it was error for the trial court not to add language to each of the seven sexual abuse instructions so that the jury would be required to distinguish from the evidence one count from another. We agree.

Each sexual abuse instruction was identical and read, in pertinent part, as follows:

> You will find the defendant, Wilbert Hiatt Harp, guilty under this Instruction if you believe from the evidence beyond a reasonable doubt, all of the following:
>
> (a) That in this county, between the 1st day of December 2003 and the 1st day of February 2006, the defendant subjected [B.B.] to sexual contact;
>
> AND
>
> (b) That at the time of such contact, [B.B.] was less than 12 years of age.

3

We have previously held that "when multiple offenses are charged in a single indictment, the Commonwealth must introduce evidence sufficient to prove each offense and to differentiate each count from the others, and the jury must be separately instructed on each charged offense."[2] Thus, we have clearly held—before Harp's trial—that a trial court errs in a case involving multiple charges if its instructions to the jury fail "factually [to] differentiate between the separate offenses."[3] Very recently—after Harp's trial—we similarly reinforced that holding by again explaining that "[w]hen the evidence is sufficient to support multiple counts of the same offense, the jury instructions must be tailored to the testimony in order to differentiate each count from the others."[4]

Based on this precedent, it is apparent that the trial court erred by submitting seven identical sexual abuse instructions to the jury. We again instruct the bench and bar of the Commonwealth that in a case involving multiple counts of the same offense, a trial court is obliged to include some sort of identifying characteristic in each instruction that will require the jury to determine whether it is satisfied from the evidence the existence of facts proving that each of the separately charged offenses occurred.

Having found that the instructions at issue were erroneous, we now turn to the more difficult question of whether that error may be deemed harmless.

---

[2]  Miller v. Commonwealth, 77 S.W.3d 566, 576 (Ky. 2002).

[3]  Combs. v. Commonwealth, 198 S.W.3d 574, 580 (Ky. 2006).

[4]  Bell v. Commonwealth, 245 S.W.3d 738, 744 (Ky. 2008). *Accord* State v. Rudd, 759 S.W.2d 625, 630 (Mo.App. 1988) ("We agree with the general proposition that if multiple offenses are submitted against a single defendant, the different offenses submitted should be distinguished. As much is inherent in the well established rule that the giving of distinctive instructions is a proper method of submitting multiple offenses.").

Despite our earlier statements seemingly to the contrary, we now hold that a failure to include proper identifying characteristics in jury instructions is reversible error, provided that a timely objection to the error has been made.

. We recognize, of course, that an erroneous jury instruction may sometimes be an unfortunate, yet ultimately harmless error.[5] But a party claiming that an erroneous jury instruction, or an erroneous failure to give a necessary jury instruction, bears a steep burden because we have held that "[i]n this jurisdiction it is a rule of longstanding and frequent repetition that erroneous instructions to the jury are presumed to be prejudicial; that an appellee claiming harmless error bears the burden of showing affirmatively that no prejudice resulted from the error."[6] Regrettably, we have sometimes failed to utilize the presumption of prejudice associated with erroneous jury instructions in at least some of our recent decisions.[7] However, to clear up any possible confusion among the bench and bar of the Commonwealth, we now expressly return and adhere to the presumption of prejudice inherent in an erroneous instruction as expressed in McKinney. Of course, that presumption can be successfully

---

[5] See, e.g., Neder v. United States, 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (finding omission of element of offense in jury instruction harmless error); RCr 9.24.

[6] McKinney v .Heisel, 947 S.W.2d 32, 35 (Ky. 1997). We recognize that McKinney is a civil case. But we believe the heightened stakes of a criminal case must lead to at least an equally, if not more rigorous, approach to harmless error in jury instructions. Indeed, McKinney's proper approach to jury instruction errors has been recognized in criminal cases. See Batts v. Commonwealth, 2005 WL 3500779 at *3 (Ky. Dec. 22, 2005); Wilson v. Commonwealth, 2004 WL 2624155 at *3 (Ky. Nov. 18, 2004); Commonwealth v. Hager, 35 S.W.3d 377, 379 (Ky.App. 2000).

[7] See, e.g., Thacker v. Commonwealth, 194 S.W.3d 287, 291 (Ky. 2006); Wright v. Commonwealth, 239 S.W.3d 63, 68 (Ky. 2007).

rebutted by showing that the error "did not affect the verdict or judgment."[8] But viewed through that proper procedural lens, the erroneous instructions in the case at hand cannot be deemed harmless.

Our precedent of longstanding leaves no doubt that we have adhered to the "bare bones" principle of jury instructions.[9] Indeed, former Chief Justice Palmore apparently coined the "bare bones" phrase in a 1974 civil case, although the phrase has been similarly applied to criminal cases.[10] We have explained this bare bones approach to instructions as meaning that as a general matter, "evidentiary matters should be omitted from the instructions and left to the lawyers to flesh out in closing arguments."[11] Or, as we more recently explained, jury instructions should tell the jury what it must believe from the evidence in order to resolve each dispositive factual issue while still "providing enough information to a jury to make it aware of the respective legal duties of the parties."[12]

We remain committed to the bare bones instructional principle, confident that it works well in most cases to "pare down unfamiliar and often complicated issues in a manner that jurors, who are often not familiar with legal principles,

---

[8] 5 C.J.S. *Appeal and Error* § 968 (2008). *See also* Emerson v. Commonwealth, 230 S.W.3d 563, 570 (Ky. 2007) (stating that an error is harmless if there is "no reasonable possibility it affected the verdict. . . .").

[9] *See, e.g.,* Baze v. Commonwealth, 965 S.W.2d 817, 823 (Ky. 1997).

[10] Cox v. Cooper, 510 S.W.2d 530, 535 (Ky. 1974) ("Our approach to instructions is that they should provide only the bare bones, which can be fleshed out by counsel in their closing arguments if they so desire."). We recognized Justice Palmore as the originator of the "bare bones" phraseology in Olfice, Inc. v. Wilkey, 173 S.W.3d 226, 228 (Ky. 2005).

[11] Baze, 965 S.W.2d at 823.

[12] Wilkey, 173 S.W.3d at 229.

6

can understand."[13] But instructions must not be so bare bones as to be misleading or misstate the law.[14]

As mentioned, we have determined that the law requires specific identifiers to be placed in each count in a case involving multiple counts of the same offense. So a failure to include at least some basic evidentiary identification in the sexual abuse instructions at hand was a misstatement of the law. Furthermore, the lack of specificity in the instructions readily lends itself to a potential unanimity problem.[15]

No doubt able counsel could—and in this case, did—attempt to "flesh out" the generic sexual abuse instructions in closing argument by telling the jury which specific act of sexual abuse was covered by which specific count of the charges. And, in dictum, we have appeared to approve of such attempted corrective and curative action by the Commonwealth.

Earlier this year, in Bell v. Commonwealth, we encountered a similar situation whereby a trial court gave multiple jury instructions on sexual offenses without including any distinguishing characteristics.[16] And earlier in the opinion, we had already held that Bell's convictions must be reversed due to the trial

---

[13] *Id.*

[14] *Id.*

[15] Bell, 245 S.W.3d at 744 ("The wording of the instructions, however, calls into question the unanimity of the verdict. A criminal defendant, of course, is entitled to a unanimous verdict. Ky. Const. § 7, as interpreted in Cannon v. Commonwealth, 291 Ky. 50, 163 S.W.2d 15 (1942); RCr 9.82(1). When the evidence is sufficient to support multiple counts of the same offense, the jury instructions must be tailored to the testimony in order to differentiate each count from the others. While the Commonwealth differentiated the offenses during its closing arguments, there is nothing in the written instructions to distinguish each count of rape, sexual abuse and sodomy.").

[16] *Id.*

court's unduly coercive actions during jury deliberations.[17] But we exercised our discretion to address the jury instruction issue because it was likely to occur on retrial.[18] We held that the failure to include any distinguishing characteristics in the instructions was error but found that the error would have been harmless because

> [t]he Commonwealth, in its closing, identified the five distinct incidents [of rape or sexual abuse]. Because the jury ultimately found Bell guilty of all five counts of sexual abuse, it can be rationally and fairly deduced that each juror believed Bell was guilty of the five distinct incidents identified by the Commonwealth.[19]

In essence, our imprecise and unfortunate dictum in <u>Bell</u> can be taken to stand for the proposition that able counsel may "cure" a defective jury instruction in closing argument. But we very recently made it clear in a unanimous opinion that jury instructions, which a jury is presumed to follow, must be based solely upon the evidence; and "an attorney's arguments do not constitute evidence."[20]

---

[17] *Id.* at 742-43.

[18] Because we had already found that Bell's convictions must be reversed for other reasons, our discussion of the jury instruction issue was obviously dictum. Thus, our statements on the jury instruction issue are not binding precedent. Indeed, perhaps the most esteemed jurist in our nation's history, Chief Justice John Marshall, cautioned against later courts being bound by the dicta of a previous court. *See* <u>Cohens v. State of Virginia</u>, 19 U.S. 264, 399-00, 5 L.Ed.257, 6 Wheat. 264 (1821) ("It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the Court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.").

[19] <u>Bell</u>, 245 S.W.3d at 744.

[20] <u>Dixon v. Commonwealth</u>, ___ S.W.3d ___, 2008 WL 2165961 at * 7 (Ky. May 22, 2008).

Therefore, we reached the plain conclusion that "the arguments of counsel are not sufficient to rehabilitate otherwise erroneous or imprecise jury instructions."[21]

Our conclusion that arguments of counsel cannot rehabilitate erroneous jury instructions is directly in accordance with the United States Supreme Court's pronouncement that "arguments of counsel cannot substitute for instructions by the court" because a defendant's right to have the jury base its deliberations solely upon the evidence cannot be "permitted to hinge upon a hope that defense counsel will be a more effective advocate" than the prosecution.[22] Or, in other words, the concept of fleshing out bare bones instructions permits counsel to attempt to explain the instructions to the jury but does not permit counsel to attempt to correct erroneous jury instructions.

Based on the foregoing, it is clear that the instructional error in the case at hand was not cured by the Commonwealth's closing argument. Indeed, we have previously stated in a similar case that if the issue had been preserved, we would have found a similar instructional error to necessitate reversal.[23] Likewise, we find that the Commonwealth has failed to overcome the presumption of prejudice in the case at hand,[24] meaning that the failure to include identifying language in the sexual abuse instructions necessitates reversal of Harp's sexual abuse

---

[21] *Id.*

[22] Taylor v. Kentucky, 436 U.S. 478, 488-89, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978).

[23] Miller, 77 S.W.3d at 576.

[24] In its brief, the Commonwealth seems mainly to contend that there was evidence to support the giving of seven distinct sexual abuse instructions. With that unremarkable conclusion, we agree. Rather than serving as a method to save Harp's convictions, however, the Commonwealth's argument merely serves to highlight how easy it would have been for the trial court to have followed our earlier directive to include identifying characteristics in each instruction.

convictions. <u>Bell</u> is overruled to the extent that its dictum suggests that a failure to include the requisite specific identifying language in jury instructions can be rendered a harmless error by the curative powers of counsel's closing argument.[25]

### B. No Error in Admitting Letter to Psychologist.

Harp contends that it was error to admit into evidence a letter he wrote while being treated at a psychiatric hospital. We disagree.

As we have stated many times, we may disturb a trial court's decision to admit evidence only if that decision is an abuse of discretion.[26] And a trial judge's decision represents an abuse of discretion only if the decision "was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[27]

Generally, Kentucky Rules of Evidence (KRE) 507 protects information gathered by a "psychotherapist"[28] from disclosure.[29] But the General Assembly has expressly abolished the patient privilege in child abuse cases.[30] And the

---

[25] We decline Harp's invitation to find that the sodomy instruction was similarly fatally flawed. No unanimity problem is apparent in regards to that instruction because Harp was charged with only one count of sodomy. Our precedent does not support a conclusion that a trial court is required to include any identifying evidentiary detail in instructions in which a defendant is charged with only one count of an offense. *See* <u>Bell</u>, 245 S.W.3d at 744 ("When the evidence is sufficient to support **multiple counts** of the same offense, the jury instructions must be tailored to the testimony in order to differentiate each count from the others.") (emphasis added).

[26] *See, e.g.,* <u>Brewer v. Commonwealth</u>, 206 S.W.3d 313, 320 (Ky. 2006).

[27] <u>Commonwealth v. English</u>, 993 S.W.2d 941, 945 (Ky. 1999).

[28] A licensed psychologist is considered a psychotherapist. KRE 507(a)(2)(B).

[29] *See* KRE 507(a)(2)(B).

[30] *See* Kentucky Revised Statutes (KRS) 620.050(3) ("Neither the husband-wife nor any professional-client/patient privilege, except the attorney-client and clergy-penitent privilege, shall be a ground for refusing to report under this section or for excluding evidence regarding a dependent, neglected, or abused child or the cause thereof, in any judicial proceedings resulting from a report pursuant to this section.

case at hand is a criminal proceeding involving an abused child—B.B.[31] So

KRS 620.050(3) applies, meaning that the trial court did not abuse its discretion

in admitting the letter.[32]

### C. No Error to Admit Evidence of Other Crimes, Wrongs, or Bad Acts.

Before trial, the Commonwealth gave notice that it intended to introduce

evidence of all sexual contact between Harp and B.B., regardless of whether the

conduct was specifically contained in the indictment against Harp. Harp

unsuccessfully sought to exclude the evidence of uncharged sexual contact with

B.B., which the trial court denied. On appeal, Harp contends that the admission

of the evidence in question was erroneous. We disagree.

KRE 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is

not admissible to prove the character of a person in order to show action in

---

This subsection shall also apply in any criminal proceeding in District or Circuit Court regarding a dependent, neglected, or abused child."); Mullins v. Commonwealth, 956 S.W.2d 210, 211-12 (Ky. 1997).

[31] KRS 600.020(1)(e) defines an abused or neglected child as a child whose health or welfare is harmed or threatened with harm when a parent, guardian or person exercising custodial control or supervision of the child "[c]ommits or allows to be committed an act of sexual abuse . . . upon the child. . . ."

[32] Even if we accepted for argument's sake any of Harp's arguments and assumed that the letter should not have been admitted, its admission would have been a harmless error because the gist of the letter (i.e., Harp's admission of having sexual contact with B.B.) was cumulative of Harp's admission to the authorities that he engaged in sexual conduct with B.B. See, e.g., Coulthard v. Commonwealth, 230 S.W.3d 572, 585 (Ky. 2007) ("Thus, not only were the circumstances surrounding Appellant's refusal to provide fingerprint samples undisputed, but also the evidence was cumulative in the sense that the jury already heard a plethora of evidence regarding evasive actions taken by Appellant. Under these circumstances, we simply cannot see how there is any reasonable possibility that this evidence contributed to the jury's verdict.") (footnote omitted). Furthermore, the evidence against Harp was overwhelming. See, e.g., Brewer v. Commonwealth, 206 S.W.3d 343, 352 (Ky. 2006) (holding that admission of improper investigatory hearsay was harmless error due to its cumulative nature and because evidence of defendant's guilt was overwhelming).

conformity therewith." However, such evidence is admissible if offered for another purpose, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ."[33] In determining the admissibility of KRE 404(b) evidence, we focus upon three matters: (1) relevance, (2) probativeness, and (3) prejudice.[34] As stated previously, we may reverse a trial court's decision to admit evidence only if that decision represents an abuse of discretion.[35]

The Commonwealth bore the burden of proving each element of each charge against Harp beyond a reasonable doubt.[36] Thus, the Commonwealth was required to offer proof of Harp's intent.[37] Accordingly, the evidence of other sexual contact between Harp and B.B., including, among other things, Harp's exposing his genitals to B.B. on multiple occasions, was both highly relevant and probative. Additionally, the evidence Harp challenges on appeal also was admissible as proof of at least identity and absence of mistake or accident.[38]

---

[33] KRE 404(b)(1).

[34] Matthews v. Commonwealth, 163 S.W.3d 11, 19 (Ky. 2005).

[35] Id.

[36] KRS 500.070(1).

[37] See, e.g., KRS 510.148(1) (requiring, inter alia, person to intentionally expose his genitals to be guilty of indecent exposure in the first degree)

[38] See, e.g., Noel v. Commonwealth, 76 S.W.3d 923, 931 (Ky. 2002) ("Appellant asserts that admission of C.M.'s testimony that Appellant had sexually abused her 'more than one time' violated the KRE 404(b) proscription against admission of evidence of other crimes, wrongs, or acts. However, this testimony falls within the exceptions for evidence offered to prove intent, plan, or absence of mistake or accident. KRE 404(b)(1).").

As we have definitively held, "evidence of similar acts perpetrated against the same victim are almost always admissible. . . ."[39] And we do not perceive that any prejudice suffered by Harp was sufficient to overcome the general rule regarding admissibility of similar acts perpetrated against the same victim. Thus, we find no error in the trial court's decision to admit the KRE 404(b) evidence in question.

### D. No Error in Finding B.B. Competent to Testify.

Harp contends that the trial court erred by finding B.B. competent to testify. We disagree.

Under KRE 601, a witness is competent if the witness can "perceive accurately that about which she is to testify, can recall the facts, can express herself intelligibly, and can understand the need to tell the truth. The competency bar is low with a child's competency depending on her level of development and upon the subject matter at hand."[40] Of particular bearing to this case is the fact that "[a]ge is not determinative of competency[,] and there is no minimum age for testimonial capacity."[41] Because "[t]he trial court is in the unique position to observe witnesses and to determine their competency[,]" we have held fast to the principle that "[t]he trial court has the sound discretion to determine whether a witness is competent to testify."[42]

---

[39] *Id., citing* Price v. Commonwealth, 31 S.W.3d 885, 888 n. 4 (Ky. 2000).

[40] Pendleton v. Commonwealth, 83 S.W.3d 522, 525 (Ky. 2002).

[41] *Id.*

[42] *Id.*

B.B. demonstrated that she knew such fundamental factual things as her age, date of birth, grade level, school name, and teacher's name. She also was able to recall her latest birthday party and Christmas presents, as well as the names of her former schools. At trial, B.B. identified Harp as the perpetrator and was able to provide details of the acts committed against her by Harp. Importantly, B.B. indicated when she was unable to recall a fact or event.

A witness is not deemed incompetent solely because of young age or inability to recall each and every detail of life with mathematical precision. And B.B. demonstrated a sufficient ability to recall the most pertinent facts intelligibly while knowing the importance of telling the truth. So from our review of the record, we are satisfied that the trial court did not abuse its discretion in finding B.B. competent to testify.[43]

### E. No Bolstering of B.B.'s Testimony Sufficient to Constitute a Palpable Error Occurred.

Harp contends that B.B.'s testimony was improperly bolstered by the testimony of Valerie Mason, a forensic interviewer, and Detective Rhonda Speaker of the Louisville Metro Police Department's Crimes Against Children Unit. Harp admits that this issue is unpreserved. So our review is limited to determining if any error is palpable.[44] An error is palpable only if it "is so

---

[43] See id. at 526 ("A review of D.A.'s testimony reveals that she was able to identify Appellant as the perpetrator, and could provide details of the acts committed against her. Furthermore, Appellant had the ability to cross-examine D.A. and undermine her credibility with the jury, if he felt her testimony had been coerced by the social worker. No error occurred.").

[44] Kentucky Rules of Criminal Procedure (RCr) 10.26.

14

manifest, fundamental and unambiguous that it threatens the integrity of the judicial process."[45]

We question whether bolstering occurred at all in this case. Even assuming that it did, we disagree with Harp's contention that any bolstering constituted a palpable error.

Generally, "a witness's credibility may not be bolstered until it has been attacked."[46] However, the testimony at issue is not a bolstering of B.B.'s testimony. Indeed, neither Mason nor Speaker directly spoke of B.B.'s character for truthfulness. However, the jury could have inferred that Mason was indirectly vouching for B.B.'s credibility by testifying about things like the fact that she had conducted more than 3,000 interviews with children but that not all of those cases resulted in the issuance of charges. Similarly, the jury could have inferred that Speaker was indirectly vouching for B.B.'s credibility by testifying that she had investigated cases where she had found insufficient evidence to charge a suspect. It is important to note, however, that B.B.'s credibility was not totally unchallenged because some evidence was introduced showing that B.B.'s own mother allegedly did not believe B.B. when she first disclosed Harp's alleged sexual misconduct.

Because neither Mason nor Speaker directly vouched for B.B.'s credibility, we question whether any improper bolstering of B.B.'s credibility occurred. But even if we assume for argument that Mason and Speaker's testimony

[45] Martin v. Commonwealth, 207 S.W.3d 1, 5 (Ky. 2006).

[46] Miller ex rel. Monticello Baking Co. v. Marymount Medical Center, 125 S.W.3d 274, 283 (Ky. 2004).

constitutes, at most, an indirect bolstering of B.B.'s credibility, that error is simply

not so fundamental and intolerable as to have threatened the integrity of the trial.

In short, the fact that a jury may have been able to infer that a witness was, at

most, indirectly vouching for the credibility of another witness is simply not the

stuff from which palpable errors are made.

F. <u>Trial Court Properly Denied Directed
Verdict as to Indecent Exposure Charge</u>.

Harp contends that the trial court erred in denying his motion for a directed

verdict on the indecent exposure charge. We disagree.[47]

The familiar standard for ruling on a motion for directed verdict is as

follows:

> On motion for directed verdict, the trial court must draw all fair and
> reasonable inferences from the evidence in favor of the
> Commonwealth. If the evidence is sufficient to induce a reasonable
> juror to believe beyond a reasonable doubt that the defendant is
> guilty, a directed verdict should not be given. For the purpose of
> ruling on the motion, the trial court must assume that the evidence
> for the Commonwealth is true, but reserving to the jury questions as
> to the credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under
> the evidence as a whole, it would be clearly unreasonable for a jury
> to find guilt, only then the defendant is entitled to a directed verdict
> of acquittal.[48]

---

[47] The parties disagree whether this issue is preserved as Harp raised a different
ground for his directed verdict motion before the trial court than he does on appeal.
Of course, for preservation purposes, an appellant is not permitted to make a
different argument on appeal than was made in the trial court. <u>Kennedy v.
Commonwealth</u>, 544 S.W.2d 219, 222 (Ky. 1976). Thus, preservation of this issue is
questionable, at best. However, Harp's argument would fail even if the issue were
perfectly preserved.

[48] <u>Commonwealth v. Benham</u>, 816 S.W.2d 186, 187 (Ky. 1991).

A person commits the offense of indecent exposure in the first degree if he "intentionally exposes his genitals under circumstances in which he knows or should know that his conduct is likely to cause affront or alarm to a person under the age of eighteen (18) years."[49] The jury instruction on this charge was in accordance with KRS 510.148(1). Nevertheless, Harp contends that the indecent exposure charge merged with the sexual abuse charge.

B.B. testified that once Harp showed her his penis and masturbated in front of her to the point of ejaculation. That specific episode could not have been simultaneously covered by a sexual abuse charge because exposure of Harp's penis without any touching of or by B.B. would have been insufficient to have constituted sexual abuse.[50] Thus, it was clearly not unreasonable for the jury to find Harp guilty of indecent exposure.[51]

## IV. CONCLUSION.

For the foregoing reasons, Wilbert Harp's indecent exposure and sodomy convictions are affirmed. Harp's sexual abuse convictions are vacated, and those offenses are remanded to the trial court for proceedings consistent with this opinion.

---

[49] KRS 510.148(1).

[50] KRS 510.110, which governs sexual abuse in the first degree, requires a person to subject "another person" to sexual contact. Thus, exposing one's own genitals, without any touching by another person, would not constitute sexual abuse in the first degree.

[51] Cf. Combs, 198 S.W.3d at 580-81(stating that evidence that defendant masturbated could be evidence of indecent exposure).

17

All sitting. Minton, C.J.; Abramson, Cunningham, Noble, and Venters, JJ., concur. Schroder, J., concurs in result only by separate opinion. Scott, J., concurs in part and dissents in part by separate opinion.

COUNSEL FOR APPELLANT:

Daniel T. Goyette
Louisville Metro Public Defender
Advocacy Plaza
717-719 West Jefferson Street
Louisville, Kentucky 40202

Elizabeth B. McMahon
Assistant Public Defender
Office of the Jefferson District Public Defender
100 Advocacy Plaza
717-719 West Jefferson Street
Louisville, Kentucky 40202

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Bryan Darwin Morrow
Office of the Attorney General
1024 Capital Center Drive
Frankfort, Kentucky 40601

# Supreme Court of Kentucky

## 2007-SC-000288-MR

WILBERT HARP                                           APPELLANT

V.

ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE GEOFFREY P. MORRIS, JUDGE
NO. 06-CR-000714

COMMONWEALTH OF KENTUCKY                       APPELLEE

## OPINION BY JUSTICE SCHRODER
## CONCURRING IN RESULT ONLY

I concur in result only, because, as to part III(E), I believe the majority erred in its legal analysis and in leaving an issue open which is likely to arise again on retrial. The majority recognized that the jury could infer that Mason and Speaker were "indirectly" vouching for B.B.'s credibility, but then questioned whether this was error because they did not "directly" vouch. In Bell v. Commonwealth, 245 S.W.3d 738, 744-45 (Ky. 2008), we recognized that a witness does not have to explicitly vouch for another witness's credibility in order for the testimony to be improper, but that implicit vouching runs afoul of the law as well. Id. Therefore, under Bell, I believe the testimony was error.

I am also puzzled by the majority's apparent belief that because B.B.'s credibility was challenged somewhat through the mother's testimony, that this could open the door for the vouching. If the majority is equating the mother's testimony with evidence referring to character for untruthfulness, this would open the door only to evidence

referring to character for truthfulness. KRE 608(a). The majority recognized, and I agree, that Mason's and Speaker's testimony did not refer to character for truthfulness. Therefore, it would not be admissible under KRE 608(a).

For the aforementioned reasons, I believe the admission of the testimony at issue was error. As to the convictions we are affirming, however, I agree with the majority that no palpable error occurred, and would affirm those convictions. However, because the case is being remanded in part, we also have the issue of the testimony arising again on retrial. Because I believe the testimony was error, I believe it should be inadmissible on retrial. The majority, although concluding that even if the testimony was error, it was not palpable, did not actually decide if it was, in fact, error. In order to avoid confusion on retrial, or the issue arising again on appeal, I believe it was incumbent upon the majority to actually decide whether or not this testimony is, in fact, error. For these reasons, I concur in result only.

2

# Supreme Court of Kentucky

2007-SC-000288-MR

WILBERT HARP                                     APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.            HONORABLE GEOFFREY P. MORRIS, JUDGE
NO. 06-CR-000714

COMMONWEALTH OF KENTUCKY                   APPELLEE

## OPINION BY JUSTICE SCOTT CONCURRING IN PART AND DISSENTING IN PART

Although I concur with the majority's opinion on the other issues, I must dissent on issue IIIA as the Commonwealth clearly pointed out to the jury the separate items of evidence supporting each of the seven charges; thus, the error was clearly harmless in this instance. I concede, however, that I, too, am displeased at the frequency with which our trial courts fail to differentiate multiple instructions from each other. This displeasure, however, is not sufficient to obviate the "harmless error" rule in instances like these; where there is no question that differentiating factors existed in the evidence and were pointed out to the jury in closing by the Commonwealth.

Thus, the majority's reliance on Dixon v. Commonwealth, --- S.W.3d ---, 2006-SC-000682, 2008 WL 2165961 (Ky. May 22, 2008) to overrule the harmless error analysis in Bell v. Commonwealth, 245 S.W.3d 738, 744 (Ky.

2008),[1] is simply inappropriate. As the court in Dixon acknowledged, "the issue [therein was] not whether the instructions were erroneous" – even though they did fail to differentiate which of the two "hammer blows" supported the separate offenses. Dixon, --- S.W.3d ---, 2006-SC-000682, 2008 WL 2165961 at *7 (Ky. May 22, 2008). Notably, Dixon only dealt with double jeopardy issues and affirmed the conviction discussed therein.

Moreover, the comment that "an attorney's arguments do not constitute evidence," has never been questioned. See, e.g., 75A Am.Jur.2d Trial § 443 (2008). Its purpose is to collate the evidence with the instructions, which is what occurred here. Thus, the commands of RCr 9.24, that "[n]o error . . . in anything done or omitted by the court . . . is ground for . . . setting aside a verdict . . . unless it appears to the court that the denial of such relief would be inconsistent with substantial justice," should be followed.

Here, as in Bell, the majority acknowledges that, "[n]o doubt able counsel could — and in this case, did attempt to 'flesh out' the generic sexual abuse instructions in closing argument by telling the jury which specific act of sexual abuse was covered by which specific count of the charges." These were reminders by counsel as to what the evidence was — not evidence itself. Now, by unequivocally holding "that a failure to include proper identifying characteristics in jury instructions is reversible error" and overruling Bell, the majority effectively prohibits the application of harmless error in these instances.

It is for this reason I respectfully dissent on this issue.

---

[1] The majority opinion refers to the harmless error review in Bell as dicta, which it was clearly not. Dicta is a statement in an opinion which is unnecessary to the ultimate determination. Williams v. West, 258 S.W.2d 468, 471 (Ky. 1953). The analysis referenced in Bell rendered the error harmless. Bell, 245 S.W.2d at 744.

2

# Supreme Court of Kentucky

## 2007-SC-000288-MR

WILBERT HARP                                            APPELLANT


                ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.                 HONORABLE GEOFFREY P. MORRIS, JUDGE
                          NO. 06-CR-000714


COMMONWEALTH OF KENTUCKY                     APPELLEE


### ORDER OF CORRECTION

The Memorandum Opinion of the Court, rendered October 23, 2008, is CORRECTED on its face by the substitution of page 1. Said correction does not affect the holding.

ENTERED: October 27, 2008.


_____
CHIEF JUSTICE JOHN D. MINTON, JR.