Roy APPLEGATE, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2007–SC–000444–MR.

Supreme Court of Kentucky.

Oct. 29, 2009.

Jamesa J. Drake, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Joshua D. Farley, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCHRODER.

Roy Applegate appeals from the May 21, 2007, judgment of the Lewis Circuit Court convicting him of rape in the first degree, sodomy in the first degree, and incest. Appellant was sentenced to thirty years imprisonment, and appeals to this Court as a matter of right.[1]

## BACKGROUND

Appellant lived in Lewis County, Kentucky with his daughter, HA. HA testified that her father sexually abused her beginning when she was five years old and continued until October 21, 2005. HA could not recall any specific incidents of abuse prior to turning twelve years old, but testified that her father engaged in this activity on repeated occasions between the time she was five years old and the time she turned twelve years old. She also testified that he wiped his semen on a blue sleeping bag. These incidents formed the basis for Counts I and II of the indictment.

HA did recall one specific incident on October 20th or 21st, 2005 (after she was already twelve) where Appellant "did what he usually did." HA testified that around 9:30 in the evening, "he made me go and take off my clothes." She then described acts of intercourse and sodomy, which she said made her throw up. HA also testified that "at three o'clock in the morning he would come in there and wake me up and make me do it all over again."

---

1. Ky. Const. § 110(2)(b).

On October 26, 2005, Appellant admitted to a worker for the Cabinet for Health and Family Services that he had attempted to engage in anal sex with HA, but "couldn't get it in." He admitted that he had engaged in sexual activity with HA beginning when HA was seven or eight years old. He admitted that he had performed oral sex on HA and that HA had performed oral sex on him. He stated that he did not begin having sexual intercourse with HA until six months prior to this meeting in October 2005. However, when Appellant testified at trial, he denied any wrongdoing.

At trial, Dr. Leroy Gallenstein testified that he had examined HA and found that her hymen was not intact and that her vagina had been penetrated. Sabrina Christian, a forensic biologist for the Kentucky State Police Central Forensic Laboratory testified that she examined a cutting from the sleeping bag which was seized from Appellant's home and that semen extracted from the sleeping bag matched Appellant's DNA.

The jury found Appellant guilty of rape in the first degree, sodomy in the first degree, and incest. The jury recommended, and the court imposed, two concurrent sentences of twenty years for the rape and sodomy convictions and a consecutive sentence of ten years for the incest conviction.

On appeal, Appellant raises six allegations of error:

1) the language in the indictment for Counts I and II failed to state an offense and therefore violated the doctrine of separation of powers;

2) the language in the indictment for Counts I and II left Appellant unable to protect against double jeopardy in the future;

3) the language in the indictment for Counts I and II, combined with the Commonwealth's theory of the case, HA's testimony, and the trial court's jury instructions created the possibility of a jury verdict that was not unanimous;

4) the language in the indictment for Count III, combined with the Commonwealth's theory of the case, HA's testimony, and the trial court's jury instructions created the possibility of a jury verdict that was not unanimous;

5) the trial court erred by denying Appellant the right to cross-examine two witnesses himself; and

6) the trial court erred by determining, in the presence of jurors, the status of two witnesses as experts.

For the reasons that follow, we affirm Appellant's convictions and sentence.

## ANALYSIS

### A. The Indictment Sufficiently Stated An Offense And Did Not Violate The Separation Of Powers

██ Appellant argues that the trial court erred by entering convictions on Counts I and II of the indictment because the indictment violated the separation of powers doctrine. Appellant concedes that this claim of error was not preserved for appellate review and seeks review of this issue under the palpable error rule, RCr 10.26. To prevail on an unpreserved claim of error under the palpable error rule, the Appellant must show that "manifest injustice has resulted from the error." RCr 10.26. We will reverse only if a substantial possibility exists that the result of the trial would have been different without the alleged error. *Brock v. Commonwealth,* 947 S.W.2d 24, 28 (Ky.1997).

Counts I and II of the indictment read:

COUNT I: The Lewis County, Kentucky, Grand Jury, charges that from July 1998 to July 9, 2005, in Lewis County, Kentucky, the above named defendant unlawfully committed the offense of 1ST DEGREE RAPE by engaging in sexual intercourse with HA, a child under 12 years old, AGAINST THE PEACE AND DIGNITY OF THE COMMONWEALTH OF KENTUCKY. COUNT II: The Lewis County, Kentucky, Grand Jury, charges that from July 1998 to July 9, 2005, in Lewis County, Kentucky, the above named defendant unlawfully committed the offense of 1ST DEGREE SODOMY by engaging in deviate sexual intercourse with HA, a child under 12 years old, AGAINST THE PEACE AND DIGNITY OF THE COMMONWEALTH OF KENTUCKY.

Appellant argues that the indictments for Counts I and II could be read as alleging that HA was raped and sodomized an unspecified number of times. Because the Kentucky legislature has not enacted a statute specifically criminalizing "a pattern of sexual abuse," Appellant argues that the prosecutor has usurped the Legislature's power by "creating a new crime out of whole cloth." Appellant cites the federal habeas corpus case *Valentine v. Konteh*, 395 F.3d 626 (6th Cir.2005), to argue that because the legislature *could* enact a statute criminalizing a pattern of abuse but has not, the prosecutor's lack of a specific date of rape or sodomy in the indictment is akin to creating a new crime of a "pattern of abuse."

We disagree. In *Valentine*, the defendant was convicted of 20 counts of child rape, with indictments and jury instructions for each count identically worded, and 20 counts of felonious sexual penetration, each of which was also identically worded. *Id.* at 628. The *Valentine* court noted that while "[s]tates have the authority to enact criminal statutes regarding a 'pattern' or a 'continuing course' of abuse[,][t]hey do not have the power to prosecute one for a pattern of abuse through simply charging a defendant with the same basic offense many times over." *Id.* at 634. The court concluded the prosecution's failure to differentiate factually between the offenses in each set of twenty counts violated due process in that it deprived the defendant of both adequate notice to defend himself and sufficient protection from double jeopardy. *Id.* at 636. Accordingly, the court allowed only one conviction of rape and one conviction of felonious sexual penetration to stand, and set aside the other 38 convictions. *Id.* at 637.[2]

■ Unlike in *Valentine*, in the present case the Commonwealth did not issue multiple, identical indictments for the same offenses. Appellant was simply charged with a single count of rape, a single count of sodomy, and a single count of incest. Further, it is not necessary that a child victim of sexual abuse give specific dates that the offenses occurred. In fact, "[i]t would be wholly unreasonable to expect a child of such tender years to remember specific dates, especially given the long time period over which the abuse occurred." *Farler v. Commonwealth*, 880 S.W.2d 882, 886 (Ky.App.1994). This Court has long held that in sexual abuse cases, especially those involving children, if

**2.** As grounds for upholding one conviction of each crime, the court recognized that Valentine did have notice that he was charged with the two separate crimes during the period of time specified in the indictment. *Valentine*, 395 F.3d at 628. In Kentucky, the failure to differentiate between the multiple offenses would have likely required all 40 convictions to be set aside. *See Harp v. Commonwealth*, 266 S.W.3d 813 (Ky.2008).

"time is not a material ingredient of the offense ..., all that is necessary in the indictment in this respect is that it should appear from its averments that the offense was consummated before the finding of the indictment." *Salyers v. Commonwealth,* 255 S.W.2d 605, 606 (Ky.1953). Accordingly, the indictment was proper and did not violate the separation of powers.

**B. The Indictment Was Sufficient And Does Not Render Appellant Subject To Double Jeopardy**

■ Appellant argues that the trial court erred by entering convictions on Counts I and II of the indictment because the lack of specificity in the indictment fails to protect him from double jeopardy. Appellant concedes that this claim of error was not preserved for appellate review and seeks review of this issue under the palpable error rule, RCr 10.26. Having reviewed the issue, we opine that this issue is not yet ripe for appeal.

■ This Court does not have jurisdiction to decide a question unless there is a real and justiciable controversy involving specific rights of specific parties. *Commonwealth ex rel. Watkins v. Winchester Water Works Co.,* 303 Ky. 420, 197 S.W.2d 771, 772 (1946). *See also Veith v. City of Louisville,* 355 S.W.2d 295, 297 (Ky.1962) (quoting *Black v. Elkhorn Coal Corporation,* 233 Ky. 588, 26 S.W.2d 481, 483 (1930)) ("The court will not decide speculative rights or duties which may or may not arise in the future, but only rights and duties about which there is a present actual controversy presented by adversary parties, and in which a binding judgment concluding the controversy may be entered."). Appellant has not been again arrested or indicted for any crimes for which he has already been convicted. His concerns about double jeopardy are speculative and not justiciable at this time.

■ Regardless of the ripeness of the issue, we believe a defendant who is charged and convicted of a sexual crime that occurred during a range of time cannot subsequently be charged with the same crime against the same person during the period stated in the original conviction. *Valentine,* 395 F.3d at 629. *See also Schrimsher v. Commonwealth,* 190 S.W.3d 318, 327 (Ky.2006) ("Appellant could defend himself from double jeopardy in any future prosecution ... by pleading his conviction in the case *sub judice* and requiring the subsequent prosecution to establish a different ... time frame of commission.").

**C. The Trial Court Did Not Err In Its Instructions To The Jury Regarding Unanimity**

■ Appellant argues that the trial court's instruction to the jury that their verdict "must be unanimous" was not precise enough to ensure that they actually agreed about "just what it was that defendant did." Appellant maintains that because the indictment and jury instructions alleged a range of dates wherein the offenses occurred, that there is no way to know if the jury agreed on a specific incident of sexual abuse. Appellant concedes that this claim of error was not preserved for appellate review and seeks review of this issue under the palpable error rule, RCr 10.26.

A criminal defendant is entitled to a unanimous verdict. Ky. Const. § 7 *as interpreted by Cannon v. Commonwealth,* 291 Ky. 50, 163 S.W.2d 15 (1942); RCr 9.82(1). Recently, this Court held that when an indictment charges a defendant with the same offense multiple times, the jury instructions must include language to factually distinguish one offense from another. *Harp v. Commonwealth,* 266 S.W.3d 813, 816 (Ky.2008). Harp was indicted for and convicted of one count of

first-degree sodomy, seven counts of first-degree sexual abuse and one count of indecent exposure. *Id.* All seven of the sexual abuse jury instructions were identical. *Id.* We held in that case that it was error to submit seven identical jury instructions, and instructed that in the case of multiple counts of the same offense, the jury instructions must contain some sort of distinguishing facts so that the jury may determine whether it is satisfied from the evidence the existence of facts which prove that each of the separate offenses occurred. *Id.* at 818. More important to the present case, this Court also held that there was no unanimity problem with regard to the single sodomy instruction "because Harp was charged with only one count of sodomy. Our precedent does not support a conclusion that a trial court is required to include any identifying evidentiary detail in instructions in which a defendant is charged with only one count of an offense." *Id.* at 821 n. 25.

In the case at hand, Appellant was not charged with the same offense multiple times. Rather, he was charged with one count of rape, one count of sodomy, and one count of incest. Accordingly, no error occurred.

### D. The Trial Court Did Not Err In Refusing Appellant's Request to Cross–Examine Two Witnesses On The Second Day Of Trial

■ Appellant contends that the trial court deprived him of his right to self-representation by refusing to allow him to cross-examine witnesses. On the second day of trial, Appellant notified the court that he was interested in cross-examining two witnesses, HA and Dr. Gallenstein, who had already been dismissed from the stand. Defense counsel explained Appellant's request to cross examine as:

He contends that her playing football busted her hymen. And, I told him that I did not see any reasonable basis to inquire about that so I didn't. Number two, he's contending that the doctor who testified made up records. That the doctor never had seen [HA] before. And I told him that no doctor is gonna do that and risk losing his license to come here and testify. And I refused to ask questions about that.

The trial court denied Appellant's request to cross-examine witnesses because he did not have a law degree and was "not trained to ask questions on cross-examination," and Appellant agreed to give his attorney questions to ask for him instead.

■ The trial court's rationale for not allowing Appellant to perform cross-examinations, that Appellant was not a lawyer, was not sound. A criminal defendant has a Sixth Amendment right to self-representation. *Faretta v. California,* 422 U.S. 806, 821, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A criminal defendant also has a state constitutional right to self-representation and hybrid representation under Section Eleven of the Kentucky Constitution. *See Wake v. Barker,* 514 S.W.2d 692, 695–96 (Ky.1974). As the United States Supreme Court recognized in *Faretta:*

It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. . . . And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."

422 U.S. at 834, 95 S.Ct. 2525 (internal citation omitted). Denying a request for hybrid representation solely on the grounds that a defendant does not have a law degree or is not trained in cross-examining witnesses is improper.

However, Appellant's request to cross-examine witnesses was not timely. In Kentucky, "an accused may make a limited waiver of counsel, specifying the extent of services he desires, and he then is entitled to counsel whose duty will be confined to rendering the specified kind of services (within, of course, the normal scope of counsel services)." *Wake*, 514 S.W.2d at 696. However, a defendant who wishes to waive his right to counsel, or make a limited waiver, must do so in a timely manner so as not to cause a delay in proceedings. *Soto v. Commonwealth*, 139 S.W.3d 827, 857 (Ky.2004) (citing *Robards v. Rees*, 789 F.2d 379, 383–84 (6th Cir. 1986)). A demand for self-representation is timely if made "before meaningful trial proceedings have begun," i.e. before the jury is selected or empaneled. *Soto*, 139 S.W.3d at 857 (quoting *United States v. McKenna*, 327 F.3d 830, 844 (9th Cir. 2003)); *See also United States v. Young*, 287 F.3d 1352, 1354–55 (11th Cir.2002)).

In *Moore v. Commonwealth*, we held that a motion for self-representation filed on the morning of trial was not timely. 634 S.W.2d 426, 430 (Ky.1982). The trial court may grant an untimely request, but that decision is within the sole discretion of the trial court. *Soto*, 139 S.W.3d at 857 (citing *Robards*, 789 F.2d at 384). As such, we will not disturb the decision of the trial court unless "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999).

As in *Soto*, where the defendant did not request that he make the closing argument until the closing of the guilt phase of the trial, and *Moore*, where the motion to proceed *pro se* was not filed until the morning of the trial, Appellant's request to represent himself in a limited manner was not timely. Therefore, we will not disturb the trial court's decision unless it was an abuse of discretion.

With regard to cross-examination of HA, the court may limit a defendant's contact with the victim. Even if a defendant is granted the right to cross-examine witnesses, there is no constitutional right to personally cross-examine the victim of his crimes. *Partin v. Commonwealth*, 168 S.W.3d 23, 27 (Ky.2005). Particularly in the case of sexual abuse, courts have widely held that it is not error to restrict a defendant from personally questioning the victim. *See, e.g., Maryland v. Craig*, 497 U.S. 836, 851, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); *Fields v. Murray*, 49 F.3d 1024, 1034 (4th Cir.1995).

With regard to Dr. Gallenstein, Appellant presented no basis for his beliefs to the trial court. His own attorney acknowledged that he knew of Appellant's beliefs about Dr. Gallenstein and had refused to ask questions on the subject because he had no basis for doing so.

Accordingly, while the trial court's reasoning was unsound, there were nevertheless legitimate reasons for denying Appellant's request to cross-examine the witnesses. Therefore, we conclude the trial court did not abuse its discretion in denying Appellant's request.

### E. The Trial Court's Determination Of The Status Of Two Witnesses As Experts In The Jury's Presence Was Harmless Error

Appellant argues that the trial court erred by determining, in the presence of the jury, that two of the prosecution's witnesses were experts. On the first day of trial, the Commonwealth called Dr. Leroy Gallenstein to testify. After stating his qualifications, the following exchange occurred:

"PROSECUTOR: Judge, we submit Dr. Gallenstein as an expert.

COURT: Objection?

DEFENSE COUNSEL: Yes, Judge, for the record, I object.

COURT: Overruled."

On the second day of trial, the Commonwealth called Sabrina Christian to testify. After stating her qualifications, the following exchange occurred:

PROSECUTOR: Judge, we would submit Ms. Christian as an expert witness in this field.

COURT: Objections?

DEFENSE COUNSEL: Yes, Judge, for the record I object.

COURT: Overruled. Ladies and gentlemen, the witness will be considered an expert in her field which means she is qualified to give the opinion evidence which she is about to give. Which we treat as any other evidence.

 Appellant maintains that the court's statements bolstered the credibility of these two witnesses, as well as the credibility of HA, because their testimony corroborated her testimony. The determination that a witness is an expert should be made outside the presence of the jury. *Luttrell v. Commonwealth,* 952 S.W.2d 216, 218 (Ky.1997) ("Great care should be exercised by a trial judge when the determination has been made that a witness is an expert.... All such rulings should be made outside the hearing of the jury and there should be no declaration that the witness is an expert."). Although we agree that the trial court should not make such determinations in front of the jury, these statements by the trial court were harmless error. We have noted that "the credibility of every witness ... including expert witnesses, is subject to attack and cross-examination, this being the primary means by which trial counsel can attempt to persuade jurors of the weight or significance to be attached to testimony of the witnesses...." *Edwards v. Commonwealth,* 554 S.W.2d 380, 385 (Ky.1977). Based on the evidence presented at trial and defense counsel's opportunity to cross-examine the expert witnesses, the error was not unduly prejudicial.

## CONCLUSION

For the above stated reasons, we hereby affirm Appellant's convictions and sentence.

All sitting. MINTON, C.J., ABRAMSON, NOBLE, SCOTT, and VENTERS, JJ., concur. CUNNINGHAM, J., concurs in result only by separate opinion.

CUNNINGHAM, J., concurring in result only:

With the exception stated hereafter, I concur with the excellent work of the majority.

I do not believe the trial judge committed any error in his handling of the expert witnesses in this case. In fact, I think the procedure in which the experts were qualified was entirely appropriate. Therefore, there was no need to apply the harmless error standard.

On this issue, the majority leans upon a weak reed in citing the case of *Luttrell v. Commonwealth,* 952 S.W.2d 216 (Ky.1997). We said in *Luttrell:* "This Court has never held that a trial judge is precluded from informing the jury that a witness had been recognized as an expert." *Id.* at 218. Only in dictum does that case say that "[g]reat care should be exercised by a trial judge when the determination has been made that a witness is an expert.... All such rulings should be made outside the hearing of the jury and there should be no

declaration that the witness is an expert." *Id.*

The *Luttrell* opinion goes on to say that "[i]f the jury is so informed such a conclusion obviously enhances the credibility of that witness in the eyes of the jury." *Id.* Of course, that is exactly what the qualification of an expert is supposed to do. It affords that witness the elevated status of credibility so that he or she is entitled to offer an opinion.

Except in cases where qualifications are stipulated, experts are always qualified in front of a jury. Even the sponsoring party may choose not to stipulate to the qualifications in order that the jury has the opportunity to know of the qualifications and judge that expert's credibility accordingly. Equally important is the right for the opposing party to have the opportunity to question these qualifications before a jury.

If the witness meets the threshold requirement of an expert, it is less than candid for the jury not to be apprised of that status. Otherwise, it can lead to confusion. The friendly neighbor is not allowed to give an opinion as to the danger of the gas leak she smelled; but the stranger from out of town with a briefcase is able to not only give an opinion, but offer a half day discourse on the subject.

It is my opinion that many trial judges in Kentucky deal with expert witnesses at jury trials in the same or similar manner as was done in this case. The qualifications, or lack of qualifications, are properly aired before the jury. The proper certification of the witness is made by the judge in front of the jury. It is further appropriate, in my opinion, for the court to inform the jury exactly what all the fuss is about. The fact that they are told that expert status only allows a witness to give an opinion, and the validity of that opinion

rests in their discretion, is an even-handed and straightforward way to proceed.