KELLER, J., CONCURRING IN PART AND DISSENTING IN PART:
I concur in the majority's opinion in part, but dissent from the majority's analysis of the alleged unanimity error. I dissent from this portion of the opinion for two reasons: (1) I believe this case, once again, delves further into a court-made *366 conundrum regarding the unanimity of our juries in criminal cases and (2) the opinion, as many of these cases have done, continues to weaken the palpable error analysis.
As the majority stated, the jury was presented in this case with instructions for two counts of sexual abuse. One count specified sexual abuse occurring at the victim's residence on Garvey Avenue and one count described abuse occurring at "the brown trailer" on Sioux Trail. A.S., the victim, spoke of several incidents at each of these residences that would qualify as "sexual abuse" under these instructions. The Commonwealth conceded that, under this Court's more recent case law, this constitutes a unanimity violation. However, I continue to dissent from such a reading of the unanimity requirement. Additionally, the Court determined that the error was palpable, as it was unpreserved. I also disagree with the palpable error precedent we are creating in holding that such an error is palpable.
THE EVOLUTION OF THE UNANIMITY PROBLEM
The Court began creating an unusual distinction regarding unanimous jury verdicts more recently in our precedent. Unlike the requirement of unanimous verdicts, this particular distinction regarding "duplicitous instructions" is neither ancient nor well-evolved in our jurisprudence. Early on, our understanding of what negated a unanimous verdict was much narrower than our current case law.
In Wells v. Commonwealth, in 1978, this Court recognized that multiple-theory instructions did not run afoul of the unanimous verdict requirement. Citing to a New York case, the Court quoted, "It is not necessary that a jury, in order to find a verdict, should concur in a single view of the transaction disclosed by the evidence. If the conclusion may be justified upon either of two interpretations of the evidence, the verdict can not [sic ] be impeached by showing that a part of the jury proceeded upon one interpretation and part upon the other ..." Wells v. Commonwealth, 561 S.W.2d 85, 88 (Ky. 1978) (quoting People v. Sullivan, 173 N.Y. 122, 65 N.E. 989, 990 (1903) ) (emphasis added). The Court, upon this principle, held that "it was not necessary that all jurors should agree in the determination that there was a deliberate and premeditated design to take the life of the deceased, or in the conclusion that the defendant was at the time engaged in the commission of a felony, or an attempt to commit one." Wells, 561 S.W.2d at 88. Instead, "[i]t was sufficient that each juror was convinced beyond a reasonable doubt that the defendant had committed the crime ... as ... defined by statute." Id. The Court went even further to establish this holding: "We hold that a verdict can not [sic ] be successfully attacked upon the ground that the jurors could have believed either of two theories of the case where both interpretations are supported by the evidence and the proof of either beyond a reasonable doubt constitutes the same offense." Id.
For decades, the Court held steadfast to this constant: when both theories of a crime are supported by the evidence, multiple-theory instructions are sufficiently protective of the right to a unanimous verdict. See Harris v. Commonwealth, 793 S.W.2d 802 (Ky. 1990) (overruled on other grounds by St. Clair v. Commonwealth, 451 S.W.3d 597 (Ky. 2014) ); Davis v. Commonwealth, 967 S.W.2d 574 (Ky. 1998). In contrast, when one of the alternative theories is unsupported by the evidence, then these multiple-theory instructions become a unanimity issue. See Boulder v. Commonwealth, 610 S.W.2d 615 (Ky. 1980) (overruled on other grounds by *367 Dale v. Commonwealth, 715 S.W.2d 227 (Ky. 1986) ) ; Hayes v. Commonwealth, 625 S.W.2d 583 (Ky. 1981) ; Burnett v. Commonwealth, 31 S.W.3d 878 (Ky. 2000) (overruled on other grounds by Travis v. Commonwealth, 327 S.W.3d 456 (Ky. 2010) ) ; Commonwealth v. Whitmore, 92 S.W.3d 76 (Ky. 2002).
In Burnett, this Court stated that "the Commonwealth has to show that it has met its burden of proof under all of the alternate theories presented by the instruction. Once that is shown, it becomes irrelevant which theory each individual juror believed." 31 S.W.3d at 883 (emphasis added). In Caudill v. Commonwealth, two defendants were each charged as principal or accomplice in the victim's murder. 120 S.W.3d 635, 666 (Ky. 2003). The jury was permitted, if they could not agree which defendant was principal and which was accomplice, to find them guilty as "principal or accomplice." Id. The Court specifically held that "[t]he unanimity requirement was not violated because both theories were supported by the evidence." Id. (citing to Halvorsen v. Commonwealth, 730 S.W.2d 921, 925 (Ky. 1986) ; Ice v. Commonwealth, 667 S.W.2d 671, 677 (Ky. 1984) ; Wells, 561 S.W.2d at 88 ).
In Johnson v. Commonwealth, the defendant was charged with one count of possession of drug paraphernalia, but the evidence proved that she had possession of multiple paraphernalia items. 105 S.W.3d 430, 442-43 (Ky. 2003). The jury instruction did not specify to which item it referred. Id. at 442. This Court explicitly stated that "[t]he fact that the Commonwealth presented evidence of several different items of paraphernalia, or even that the jurors might have based their verdict on different items of paraphernalia, does not jeopardize Appellant's right to a unanimous verdict in the absence of a failure of proof as to one of the items of paraphernalia." Id. at 443 (emphasis added).
However, the Court, in 2008, began a shift. In Bell v. Commonwealth, the victim, K.T., testified that the defendant began sexually abusing her when she was in second grade, for a period of three years. 245 S.W.3d 738, 740 (Ky. 2008) (overruled on issue of the curative power of closing argument as to erroneous instructions by Harp v. Commonwealth, 266 S.W.3d 813 (Ky. 2008) ). Although K.T. testified that the abuse occurred "most nights," the defendant was charged with only five counts of first-degree rape, with the lesser included offense of first-degree sexual abuse, and five counts of sodomy first-degree. Id. at 740-41. The jury instructions did not include any distinguishing characteristics for the counts. Id. at 743. Defendant was found guilty of five counts of sexual abuse first-degree and only one count of sodomy first-degree. Id. at 741.
The Court stated that "[w]hen the evidence is sufficient to support multiple counts of the same offense, the jury instructions must be tailored to the testimony in order to differentiate each count from the others." Id. at 744. The Court found this reversible error as to only the sodomy instruction. Id. "Because the jury ultimately found Bell guilty of all five counts of sexual abuse, it can be rationally and fairly deduced that each juror believed Bell was guilty of the five distinct incidents identified by the Commonwealth." Id. However, as to the sodomy charge, the Court shifted its prior language regarding a jury's ability to believe different theories of the case: "it must be evident and clear from the instructions and verdict form that the jury agreed, not only that Bell committed one count of sodomy, but also exactly which incident they all believed occurred." Id. (emphasis original). Now, here the issue was correctly reversed as Bell had no *368 meaningful appellate review, as the facts leading to his convicted charge were unknown and he had no realistic knowledge upon which to base his appeal. See id. However, the Court's language began the troubling shift in our unanimity holdings: that the jury must all believe exactly the same set of facts leading to its conviction. I am not persuaded that this is what our Constitution requires, nor what was intended by our unanimity precedent.
In Harp v. Commonwealth that same year, this Court further refined this new line of thinking in unanimity cases. Defendant sexually abused his girlfriend's four-year-old daughter, B.B., from December 2003 to February 2006. Harp, 266 S.W.3d at 816-17. The jury was charged with instructions for seven counts of sexual abuse first-degree, one count of sodomy first-degree, and one count of indecent exposure. Id. at 817. The sexual abuse instructions were identical and factually undistinguished, all giving the same time period as described. Id. The Court held that "in a case involving multiple counts of the same offense, a trial court is obliged to include some sort of identifying characteristic in each instruction that will require the jury to determine whether it is satisfied from the evidence the existence of facts proving that each of the separately charged offenses occurred." Id. at 818. The Court also held that such error, if preserved, is reversible. Id. Yet, after this case was published, the Court continued to hold both that these kinds of undistinguished instructions in multiple count cases were error, see Miller v. Commonwealth, 283 S.W.3d 690 (Ky. 2009), while still finding the multiple-theory instructions, if both theories are supported by evidence, are adequate. See Beaumont v. Commonwealth, 295 S.W.3d 60 (Ky. 2009), Jones v. Commonwealth, 331 S.W.3d 249 (Ky. 2011).
The Court was again faced with an alleged unanimity error in Applegate v. Commonwealth. H.A. testified that her father sexually abused her for over seven years, beginning when she was five-years-old. Applegate v. Commonwealth, 299 S.W.3d 266, 268 (Ky. 2009). Although H.A. testified that this happened continually during this period, defendant was charged with only one count each of rape first-degree, sodomy first-degree, and incest. Justice Schroder wrote the majority opinion of the Court, emphasizing that "[i]t would be wholly unreasonable to expect a child of such tender years to remember specific dates, especially given the long time period over which the abuse occurred." Id. at 270 (quoting Farler v. Commonwealth, 880 S.W.2d 882, 886 (Ky. App. 1994) ). The Court acknowledged the ruling from Bell and Harp that "when an indictment charges a defendant with the same offense multiple times, the jury instructions must include language to factually distinguish one offense from another." Applegate, 299 S.W.3d at 271 (citing Harp, 266 S.W.3d at 816 ). However, the Court cited to the same decision on the issue of one sodomy instruction, stating "[o]ur precedent does not support a conclusion that a trial court is required to include any identifying evidentiary detail in instructions in which a defendant is charged with only one count of an offense." Applegate, 299 S.W.3d at 272 (quoting Harp, 266 S.W.3d at 821, n. 25 ) (emphasis added). Defendant's convictions were upheld as he "was not charged with the same offense multiple times. Rather, he was charged with one count of rape, one count of sodomy, and one count of incest." Applegate, 299 S.W.3d at 272.
Other jurisdictions also permit this distinction between multiple crimes evidence and alternative means evidence within the realm of sexual abuse cases. In State v. Gustafson, the defendant was charged *369 with one count of sexually assaulting a minor. 119 Wis.2d 676, 350 N.W.2d 653, 663 (1984). However, evidence at trial included "more than one act of sexual contact with" the victim. Id. The majority of the court "conclude[d] that these acts of sexual contact were simply alternative means of committing the actus reus element, i.e. the wrongful act of sexual contact, involved in the crime of second-degree sexual assault." Id. Unanimity was only required if the acts are "conceptually distinct." Id. (citing State v. Lomagro, 113 Wis.2d 582, 335 N.W.2d 583 (1983) ). Because both assaults fit the description of "sexual contact," the court considered it "conceptually similar." Gustafson, 350 N.W.2d at 663. Thus, a generalized instruction on unanimity was sufficient to protect the constitutionality of the verdict. See id.
The New Mexico Court of Appeals delved into a similar issue in a trafficking and possession case. State v. Godoy, 284 P.3d 410 (N.M. Ct. App. 2012). There, law enforcement found crack cocaine in defendant's vehicle and a large portion of cocaine in the vehicle of an associate of the defendant. Id. at 412. The jury found defendant guilty of the lesser-included offense of possession on the trafficking charge. Id. Defendant argued that the lack of specificity regarding which portion of cocaine led to the conviction violated his right to unanimity. Id. at 412-13. The court, however, determined this situation was simply an "alternative theory" case for which "jury unanimity is required only as to the verdict, not to any particular theory of guilt." Id. at 413.
Jurors do not have " 'to agree upon a single means of commission' because 'different jurors may be persuaded by difference pieces of evidence, even when they agree upon the bottom line." ' Id. (quoting Schad v. Arizona, 501 U.S. 624, 631-32, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (internal quotation marks and citation omitted) ). "[W]hen a single crime can be committed in various ways, jurors need not agree upon the mode of commission." Godoy, 284 P.3d at 413 (quoting Schad, 501 U.S. at 649, 111 S.Ct. 2491 ). The prosecution had two alternate theories of guilt, one based upon the cocaine in defendant's car and one upon the cocaine in the associate's vehicle. Godoy, 284 P.3d at 413. "[J]ury unanimity was required only on the overall verdict, not on either of the State's alternative theories of trafficking or possession." Id. "Here, the jury was unanimous in its finding of guilt, and it need not have agreed on either of the State's alternative theories of Defendant's possession of cocaine." Id. at 414-15. Even if there was error, the court found no fundamental error resulting in "a miscarriage of justice." Id. at 415.
"A jury must unanimously agree that the state has proved each element of an offense. But the jury is not 'always required to agree on alternative ways in which a crime can be committed." ' State v. Ayala-Leyva, 848 N.W.2d 546, 553-54 (Minn. Ct. App. 2014) (internal citations omitted). "[A] jury need not unanimously decide 'which of several possible sets of underlying brute facts make up a particular element,' or 'which of several possible means the defendant used to commit an element of the crime." ' Id. at 554 (quoting Richardson v. United States, 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) ). In that particular case before the court, the jury was presented with twenty different "overt acts" used to prove a conspiracy but the jury was not required to agree on a particular overt act. Ayala-Leyva, 848 N.W.2d at 554-55. "[E]ach overt act provided alternative means to prove the element in furtherance of the crime of conspiracy, and thus constituted a 'brute fact' to support an element of the *370 offense[.]" Id. at 555. The jury did not need to unanimously decide on a particular overt act. Even if there was error, the court found no evidence affecting defendant's substantial rights. Id.
In Ohio, the courts looked to unanimity in the context of statutory "sexual conduct." State v. Gardner, 118 Ohio St.3d 420, 889 N.E.2d 995, 1005 (2008). Because the statutory definition included both vaginal and anal intercourse, the court "concluded that jurors needed to find only that sexual conduct had occurred ... and[ ] because the statute did not require a specific finding as to the type of rape, the trial court did not err by refusing to instruct the jury that it must make that finding." Id. (citing State v. Thompson, 33 Ohio St.3d 1, 514 N.E.2d 407 (1987) ). The court distinguished between "alternative means" and "multiple acts." Gardner, 889 N.E.2d at 1005-06. "Unanimity is not required ... as to the means by which the crime was committed so long as substantial evidence supports each alternative means." Id. at 1005. Multiple acts, however, involve "several acts [that] are alleged and any one of them could constitute the crime charged." Id. at 1005-06.
"[W]hen a single crime can be committed in various ways, jurors are not required to unanimously agree upon the mode of commission." Id. at 1008 (quoting People v. Griffin, 90 Cal.App.4th 741, 750, 109 Cal.Rptr.2d 273 (Cal. App. 2001) ). In Gardner, the court determined burglary was an "offense with multiple modes of commission." Gardner, 889 N.E.2d at 1009. "There are different means of accomplishing this crime, but the different ways do not create separate and distinct offenses." Id. The court specifically referenced modes of the commission of rape:
[W]e do not require all jurors to agree whether a defendant raped a victim orally, vaginally, or anally, because all three constitute 'sexual conduct' in violation of the rape statute. In such cases, there is no violation of the jury unanimity rule so long as all of the jurors agree that there was sufficient penetration to satisfy the 'sexual conduct' element of the crime.
Id. (citing Thompson, 514 N.E.2d 407 ). Like in our aforementioned case law, the jury may disagree on the mode of how a crime was committed but all agree the defendant committed the crime in question. All the jurors agree that each element of the crime was satisfied. The jury members agree that the prosecution proved each element beyond a reasonable doubt. So long as these fundamental elements are satisfied, unanimity is satisfied. Under this precedent, King's conviction would be affirmed. He was charged and convicted of two counts of sexual abuse, first-degree. Even assuming arguendo that the jurors in the case at bar may have disagreed as to the mode of "sexual contact" under the definitions statute or the particular means with which a certain element was met would not require reversal. All twelve agreed that each element was proven by the Commonwealth beyond a reasonable doubt.
Unfortunately, this Court's precedent went one step further and, I believe, truly violated the principles of the meaning of unanimity in our Constitution and the principles supporting all of these prior unanimity cases. In Johnson v. Commonwealth, 405 S.W.3d 439 (Ky. 2013) the Court specifically addressed a single instruction for one count of a crime when the evidence at trial presented proof of more than one instance that would, on its own, meet the requirements of the instruction. The Court held "that such a scenario-a general jury verdict based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based *371 on the proof-violates the requirement of a unanimous verdict." Johnson, 405 S.W.3d at 449. Justice Noble, in a well-reasoned and thoughtful opinion, compared the situation to the federally condemned problem of duplicitous instructions. Id. 453-54. In such instructions, "a duplicitous count includes in a single count what must be charged in multiple counts." Id. at 454. Federal courts reject such duplicitous indictments as "a general verdict of guilty does not disclose whether the jury found the defendant guilty of one crime or both ..." Id. (quoting Johnson v. United States, 398 A.2d 354, 369-70 (D.C. 1979) (quoting United States v. Starks, 515 F.2d 112, 116-17 (3d Cir. 1975) ) ). While recognizing that the federal unanimity laws are not applicable to the states, the majority found the logic of these holdings persuasive as to Kentucky's unanimity requirement. Johnson, 405 S.W.3d at 455. Justice Noble crafted a hypothetical to explain the difference:
An instruction that includes multiple crimes but directs only one conviction ... is like giving directions to a McDonald's on the east side of town to half a group of travelers, and directions to one on the west side of town to the other half, despite a rule that requires all the travelers to go to the same restaurant. Both groups arrive at a McDonald's, but not all the travelers are in the same place.
Id. According to the majority's logic, "[t]he unanimity requirement mandates that jurors end up in the same place." Id. While the jury "appear[s] to end up in the same place in order to convict[,] ... that appearance is illusory because we can never know whether the jurors are indeed in the same place." Id.
The hypothetical is persuasive. However, it misstates the circumstances of this kind of issue. It is not that the travelers are ending up in two different places. Instead, six travelers take the expressway and six travelers take country roads; nonetheless, the twelve travelers all meet at the exact same location in the end. Once again, we ask the wrong question. It is not whether the jurors all took the same path to reach the verdict; it is whether they ended at the same point unanimously. Unanimity as to mode is not required; it is unanimity of the verdict that is integral. As Justice Cunningham stated in his dissent in Johnson, "[w]e are requiring juries to be unanimous on matters that the unanimous verdict requirement never anticipated." Id. at 461. Our Constitution and our prior case law has never required that juries unanimously agree on a particular set of facts. In fact, our case law has held just the opposite. See Wells, 561 S.W.2d at 88. Rather, it is the unanimity of the verdict that is integral to our constitutional analysis and it is the unanimity of the verdict that is a matter of due process. This requires a unanimous jury finding that the prosecution has proven each element of the offense. If a particular element could be proven in multiple ways, why should the jury be required to distinguish which alternative means it decides upon? Such distinction should only be required when it affects the defendant's substantial rights, either through his right to appeal, his ability to present a defense, notice of his charges, etc.
UNANIMITY VS. REVIEWABILITY
Why is there a difference between these two treatments, i.e. between the situation in Applegate in contrast to Bell and Harp ? Between alternative means and multiple acts? Why should we require unanimity on elements and not on facts? Why did the decision in Johnson distinctly cross a line into new territory? I cite Justice Cunningham's dissent in Johnson. The unanimity issues as described in these sexual abuse *372 cases are not, in actuality, unanimity issues. Instead, they are reviewability issues. In many of these cases where a defendant is found guilty of multiple counts without distinguishing characteristics, "the reviewing court cannot be certain which offense or offenses were committed-not whether the jury voted unanimously. So it is not a unanimity issue. It is a review problem." Johnson, 405 S.W.3d at 460 (Cunningham, J., concurring in part and dissenting in part). This important distinction draws the line for why our cases have been so conflicted and have created such an untenable position for prosecutions of sexual abuse cases. We are simply asking the wrong question. The question is not whether the jury all agreed to the exact same act to reach its verdict. The question is, instead, are we able to adequately review that verdict? When only one offense has been charged, as in Applegate, it is easily reviewable as all the evidence was integral to prosecution of that one count. If there are multiple counts and the jury returns guilty verdicts on all, as in the sexual abuse counts in Bell, once again, reviewability is not an issue. However, when there are multiple counts and only some return guilty verdicts, like the sodomy counts in Bell, then reviewability becomes an integral issue. If the Court cannot determine what the defendant was convicted of, then that defendant has lost all means to any effective appeal. However, this does not necessarily mean that his verdict was non-unanimous. The majority implies that the distinction is meaningless, that what we call the problem is irrelevant. However, I would argue that it goes to the heart of the issue and determines whether the error is reversible or not. If a defendant loses the effective means of appeal, his due process rights have been violated and there is an error of constitutional magnitude that must be corrected. However, if reviewability is not affected, then I would hold that the error is not necessarily one affecting the due process rights of the defendant.
RE-EXAMINING THE PURPOSE BEHIND UNANIMITY
I question the practical distinction between one instruction on multiple instances, where each of these multiple instances is sufficiently proven, and a multiple-theory instruction. If we do not require a jury to unanimously decide whether a murder was intentional or wanton under old statutes, or a principal or accomplice, or whether the murder weapon was a knife or a sword, etc., then why must all twelve jurors agree as to only one particular instance of abuse? Consider these two scenarios: (1) on a charge of murder, six jurors believe the defendant was the accomplice and six jurors believe the defendant was the principal actor but all agree that the defendant is criminally responsible for the victim's death; (2) on a charge of sodomy, six jurors believe defendant performed oral sex on the victim while six jurors believe the defendant forced the victim to perform oral sex on him, but all agree the defendant is criminal responsible for "sodomy." There is no practical difference between these scenarios. Instead, what this Court has created is a distinction without merit that severely incapacitates the ability to prosecute sexual abuse cases.
Not only is this distinction without legal basis, there are also numerous policy reasons for reinstating the analysis in our unanimity holdings prior to Johnson. This court-made distinction has been the downfall of numerous sex abuse cases. See e.g. Kingrey v. Commonwealth, 396 S.W.3d 824 (Ky. 2013) ; Martin v. Commonwealth, 456 S.W.3d 1 (Ky. 2015) ; Ruiz v. Commonwealth, 471 S.W.3d 675 (Ky. 2015) ; and Jenkins v. Commonwealth, 496 S.W.3d 435 (Ky. 2016). These holdings require prosecutors *373 to force victims to testify to unique, identifying characteristics-each incident of abuse and violence against them must have some unique quality which they must remember to an extent beyond reproach upon cross-examination. Their credibility must be upheld with the jury, even while being forced to relive what may be some of the worst moments of their life. This Court would require them not only to relive those moments, but also to be sure to notice the room, the clothes the abuser is wearing, the weather of the day, etc. But that detail must be unique for each circumstance. Additionally, I question whether these kinds of details will ever be subject to recall in some cases. In such cases, must the Commonwealth abandon all prosecution?
The majority states that this particular "lament" is unfounded and that "[e]very child that is competent to testify to the abuse they suffered can relate some distinction between abusive acts, however trivial, minute, or obscure." First, I would state that such a broad and generalized statement cannot be accurately made without reservation. Second, even the cases cited by the majority opinion recognize that this lack of distinction is a real and concrete barrier faced in child abuse prosecutions.
Particularly when the accused resides with the victim or has virtually unchecked access to the child, and the abuse has occurred on a regular basis and in a consistent manner over a prolonged period of time, the child may have no meaningful reference point of time or detail by which to distinguish one specific act from another. The more frequent and repetitive the abuse, the more likely it becomes that the victim will be unable to recall specific dates and places. Moreover[,] because the molestation usually occurs outside the presence of witnesses, and often leaves no permanent physical evidence, the [prosecution's] case rests on the testimony of a victim whose memory may be clouded by a blur of abuse and a desire to forget.
State v. Arceo, 84 Hawai'i 1, 928 P.2d 843, 868 (1996) (quoting State v. Brown, 55 Wash.App. 738, 780 P.2d 880, 885 (1989) (citation omitted) ). An abused child,
assertedly molested over a substantial period by a parent or other adult residing in [the] home, may have no practical way of recollecting, reconstructing, distinguishing or identifying by 'specific incidents or dates' all or even any such incidents. (Indeed, even a mature victim might understandably be hard pressed to separate particular incidents of repetitive molestations by time, place or circumstance.)
State v. Ashkins, 357 Or. 642, 357 P.3d 490, 497 (2015) (quoting People v. Jones, 51 Cal.3d 294, 270 Cal.Rptr. 611, 792 P.2d 643, 648 (1990) (citation omitted) ).
Yes, a defendant's rights are paramount in a criminal trial. However, this Court has read into the unanimity requirement a new and different standard not guaranteed by our state Constitution. This is not an imagined barrier, as the majority opinion seems to imply. It is a real obstacle in these kinds of prosecutions. Given the history surrounding the evolution of this issue, and with great respect to my learned colleagues, I see no reason to persist in reading our laws this way.
For all these reasons, I believe now is our opportunity to overrule Johnson v. Commonwealth and the successive line of cases holding the instructions at issue are reversible error. The majority opinion states that it would "egregiously err" in "renounc[ing] our jurisprudence in this matter and pretend that this problem does not exist." I, in sharp contrast, believe it to be egregious error to continue a legal fiction that serves no constitutional purpose *374 absent creating insurmountable barriers to the efficient and effective prosecution of abusers. Other jurisdictions, as cited herein and by the majority, have developed tests and rules to examine how unanimity is affected in each situation. There is no reason our court should steadfastly hold to such a bright-line and rigid rule.
I would reiterate our prior holdings that where only one count has been charged, unanimity is not an issue. I would also clarify that reviewability is a distinct issue from non-unanimous verdicts. While I anticipate that this issue will become less prevalent due to the recent legislation passed by the General Assembly allowing prosecution for a continuing course of conduct, I am concerned that our current case law continues to be a source of confusion on this issue. This error must be corrected, and I believe now is the time.
Even if this Court chooses not to overrule this line of cases, I would encourage the Court to look to other jurisdictions' analysis of the issue in contrast to our treatment of unanimity. In most of these other jurisdictions, prosecutors are encouraged to elect the incident the jury is to consider or to give a generalized instruction on unanimity. I believe this handling could be helpful to practitioners and the bench in this Commonwealth. Additionally, other states look at the particular circumstances each time this issue is raised by a defendant. It is not simply that, ipso facto, unanimity error leads to reversing the conviction. Instead, it is an in-depth analysis which looks at the rights of the defendant and whether his right to a fair trial was impeded by the error. This leads me to our palpable error analysis.
WEAKENING THE PALPABLE ERROR ANALYSIS
The majority of this Court has determined that the error described here, an allegedly duplicitous instruction leading to a non-unanimous verdict, is palpable error. See Johnson, 405 S.W.3d at 457. The Court stated that "this type of error, which violates a defendant's right to a unanimous verdict and also touches on the right to due process, is a fundamental error that is jurisprudentially intolerable." Id. The Court determined the error was palpable and required reversal. Id. It seems the Court determined, as a bright-line rule, that the alleged error would always be considered palpable. I disagree with this assumption.
As Justice Cunningham stated in his dissent in Johnson: "We are watering down our palpable error standard with holdings such as this to the point that it behooves the defense lawyer not to object on jury instructions and just allow the trial court to walk-unwarned-onto the unanimity land mine." Id. at 461. This Court has a long history of considering the palpable error standard to be an incredibly high bar. Even when the error was considered palpable and "affect[ed] the substantial rights of a party," relief will only be granted "upon a determination that manifest injustice has resulted from the error." Commonwealth v. Jones, 283 S.W.3d 665, 668 (Ky. 2009). "An error is 'palpable,' ... only if it is clear or plain under current law[.]" Id. (quoting Brewer v. Commonwealth, 206 S.W.3d 343 (Ky. 2006) ). Even then:
An unpreserved error that is both palpable and prejudicial still does not justify relief unless the reviewing court further determines that it has resulted in a manifest injustice, unless in other words, the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable.'
*375 Jones, 283 S.W.3d at 668 (quoting Martin v. Commonwealth, 207 S.W.3d 1, 4 (Ky. 2006) ). Furthermore,
Under this rule, an error is reversible only if a manifest injustice has resulted from the error. That means that if, upon consideration of the whole case, a substantial possibility does not exist that the result would have been different, the error will be deemed nonprejudicial.
Martin, 207 S.W.3d at 3 (quoting Graves v. Commonwealth, 17 S.W.3d 858, 864 (Ky. 2000) (quoting Jackson v. Commonwealth, 717 S.W.2d 511, 513 (Ky. App. 1986) ) ). "[T]he required showing [for relief from a palpable error] is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." Martin, 207 S.W.3d at 3.
"To discover manifest injustice, a reviewing court must plumb the depths of the proceeding ... to determine whether the defect in the proceeding was shocking or jurisprudentially intolerable." Id. at 4. "When an appellate court engages in a palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." Id. at 5. See also McGuire v. Commonwealth, 368 S.W.3d 100, 112 (Ky. 2012).
In Johnson, Justice Cunningham opined in his dissent that the error, at its worst, was not palpable error. Johnson, 405 S.W.3d at 462. He stated:
In the case before us-in its worst unanimity posture-six people believed Appellant committed first-degree criminal abuse on one date and six believed the offense was committed on a different date, both within the time period of the charge. Nevertheless, a unanimous jury found Appellant guilty of one count of first-degree criminal abuse. Surely, this is not 'palpable error' as we have traditionally envisioned.
Id. Similar to the case in Johnson, the worst-case scenario here presents a jury divided on which particular incident of abuse was referenced to find King guilty of sexual abuse. I agree with Justice Cunningham that such a situation is not what the rules intended to prevent by the rule on palpable error.
It seems the majority of jurisdictions facing this particular issue follows what is known as the either/or rule. State v. Nicholas, 203 Vt. 1, 151 A.3d 799, 804-05 (2016). The rule "requires either the election of a single act as a basis for the charged offense or an instruction requiring the jury to be unanimous in determining which act supports a conviction." Id. Even given this majority rule, however, many courts have declined to reverse "for a failure to give a specific unanimity instruction in multiple-acts cases where the evidence concerning the alleged acts was not materially or conceptually distinct or the same blanket or generic defense was proffered with respect to all of the acts." Id. at 805.
In Nicholas, the defendant presented one defense-the victim's injuries were caused by accidents rather than his intentional abuse. Id. at 806. "[I]n light of defendant's blanket defense to the charges against him, he was not prejudiced by the omission of a specific unanimity instruction, and thus there is no plain error." Id. at 807. The issue becomes one of credibility: if the jury believed the defendant's blanket defense, then they would not distinguish between specific acts. The jury either believes the defendant or the victim. Thus, when there is no distinction of defense between specific acts, there is no actual prejudice in the absence of a specific unanimity instruction or specificity in the jury instruction.
*376 In Texas, the courts determined the instruction on one charge with evidence of multiple acts was in error. Cosio v. State, 353 S.W.3d 766, 774 (Tex. Crim. App. 2011). However, the "defense was essentially of the same character and strength across the board." Id. at 777. "Had the jury believed [Cosio's defense], they would have acquitted Cosio on all counts." Id. at 777-78. Thus, based on the jury's findings, "it is logical to suppose that the jury unanimously agreed that Cosio committed all of the separate instances of criminal conduct during each of the four incidents." Id. at 778. Thus, there was no proof of actual harm and the court determined that "Cosio was [not] denied a fair and impartial trial." Id.
The Indiana Supreme Court made a similar ruling. Baker v. State, 948 N.E.2d 1169, 1178-79 (Ind. 2011). "[T]he only issue was the credibility of the alleged victims. The only defense was to undermine the young woman's credibility ...". Id. at 1179. A finding of fundamental error requires a harm that "detrimentally affected" "the defendant's right to a fair trial" and denied "procedural opportunities for the ascertainment of truth[.]" Id. Because the jury ultimately found the victims more credible than the defendant, the defendant failed to "demonstrate[ ] that the instruction error in this case so prejudiced him that he was denied a fair trial." Id. Even without discussion on blanket defenses, many courts have determined that this particular error is not necessarily reversible.[14]
Here, King was a beneficiary of prosecutorial discretion. Rather than charging multiple counts of sexual abuse, and subjecting King to a much higher sentence, the prosecution charged one count of sexual abuse for each location. The court also wisely specified that location in the jury instructions. This advantageous arrangement is potentially why King chose to remain silent on the jury instruction issue and allow the process to take hold and then seek palpable error review. Although I agree that this is not what should be prevented under the palpable error rule, I also disagree that this even qualifies under current case law as palpable error.
First, I am disinclined to accept King's position that there would have been a different result. To prove this, it would have to be shown that some of the incidents testified about by the victim were insufficient to find guilt beyond a reasonable doubt. This is not the case. A.S. spoke in depth about the abuse to which she was subjected. Each incident was sufficient for the jury to find guilt. If this is the case, then even with separate counts or testimony about only one incident, the result would have been the same.
Second, I do not succumb to the belief that King's case was "shocking or jurisprudentially intolerable." This particular situation does not affront the judicial system as *377 a whole. I do not agree that this implicates King's due process rights under the law. Instead, he benefited from the choice to be indicted only on the specified two counts of sexual abuse. As this does not "threaten[ ] the integrity of the judicial process," I do not agree that the error here, if any, was palpable to warrant reversal of these particular convictions. King's defense to the entire case was the same: "I did not do it." Clearly, the jury determined the victim was more credible than the defendant here. There was no parsing of defenses for each particular act; King had one defense and the jury did not believe it. I do not subscribe to the notion that this situation is what our courts have traditionally referred to as palpable error. Palpable error is an error that is egregious and offends the judicial process. This is simply not the case here.
I agree with many other jurisdictions that a general unanimity instruction to juries would help to cure potential error, although I maintain this is not palpable error. However, it is important to note that the jury was instructed in Instruction No. 1 that "[t]he verdicts of the jury must be unanimous[.]" Although this may not be as specific as the majority would like for a unanimity instruction, I believe it is sufficient to, at the least, remove the palpable nature of any potential error here. For the foregoing reasons, I would also affirm the sexual abuse convictions.
Cunningham and Wright, JJ., join.

See Godoy, 284 P.3d at 415 ("Here the jury was unanimous in its finding of guilt, and it need not have agreed on either of the State's alternative theories of Defendant's possession of cocaine. Under fundamental error review, we conclude that Defendant's conviction does not shock the conscience of the Court or amount to a miscarriage of justice."); Gardner, 889 N.E.2d at 1014 (In the absence of a specific unanimity instruction, "we find that Gardner's conviction in this case is not against the manifest weight of the evidence and that there is sufficient evidence to sustain it. Accordingly, we find no manifest injustice."); Ashkins, 357 P.3d at 502 ("[W]e conclude that there is little likelihood that, if it had been given the concurrence instruction that defendant requested, the jury would have reached a different result. Accordingly, we further conclude that, although the trial court erred in denying defendant's request for a jury concurrence instruction, the error was harmless.").